# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

ESTATE OF GLENN MITCHELL
HAND, by and through PHYLLIS A.
HAND, Personal Representative,

     Plaintiff,

vs.

                               CASE NO.: 4:20-CV-66-AW-HTC

FLORIDA DEPARTMENT OF
CORRECTIONS; CENTURION OF
FLORIDA; MHM HEALTH
PROFESSIONALS, INC.; DAVID E.
RODRIGUEZ-RIVERA, M.D., a/k/a
DAVID RODRIGUEZ, M.D.; JEAN
MAX SAINT CHARLES, M.D.; JUAN
SANTIAGO, M.D. a/k/a JUAN
SANTIAGO RIVERA, M.D.; PETER
FABIAN EDEMEKONG, M.D.;
DRIANNA NISHELL LAW, ARNP,

     Defendants.

_____/

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, the ESTATE OF GLENN MITCHELL HAND, by and through

PHYLLIS A. HAND, Personal Representative, by and through undersigned counsel,

hereby sues Defendant FLORIDA DEPARTMENT OF CORRECTIONS,

Defendant CENTURION OF FLORIDA, Defendant MHM HEALTH

PROFESSIONALS, INC., Defendant DAVID E. RODRIGUEZ-RIVERA, M.D.,

a.k.a. DAVID RODRIGUEZ, M.D., Defendant JEAN MAX SAINT CHARLES,

M.D., Defendant JUAN SANTIAGO, M.D., aka JUAN SANTIAGO RIVERA, M.D., Defendant PETER FABIAN EDEMEKONG, M.D., and Defendant DRIANNA NISHELL LAW, ARNP, and, in support of this Second Amended Complaint, alleges:

## INTRODUCTION

1.      This Complaint asserts claims pursuant to 42 U.S.C. § 1983, as well as claims of state law medical negligence and vicarious liability.

2.      Pursuant to § 768.28(6)(a), Fla. Stat., notice of the injuries described in this complaint was sent via certified mail to the Department of Financial Service and to Governor Rick Scott, Warden Robert E. Smith, Jr. with the Lake Butler Prison – Reception and Medical Center, Julie L. Jones with Florida Department of Corrections, and Jason M. Harrold with Centurion of Florida, LLC on June 27, 2018.

3.      Plaintiff's claims for relief are also brought herein pursuant to 42 U.S.C. §§ 1983, 1988.

4.      The claims alleged herein are brought within the applicable statute of limitations.

5.      All conditions precedent to the filing of this action have been performed, waived, excused, or otherwise occurred.

/ / /

/ / /

2

## JURISDICTION AND VENUE

6.     This court has federal question jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1343, over 42 U.S.C. § 1983 claims.

7.     This Court has jurisdiction over these claims as they arise under the Constitution of the United States of America and have been brought before this court pursuant to 42 U.S.C. § 1983

8.     This Court has supplemental jurisdiction over the related state law claims alleged herein pursuant to 28 U.S.C. § 1367, because the alleged claims arising under Florida law are so related as to form part of the same case or controversy arising under the § 1983 claims.

9.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

10.    PHYLLIS A. HAND is the surviving wife of GLENN MITCHELL HAND ("MR. HAND") and serves as the Personal Representative of the ESTATE OF GLENN MITCHELL HAND, having been so appointed on May 22, 2019.

11.    Plaintiff, PHYLLIS A. HAND, as Personal Representative of the Estate of GLENN MITCHELL HAND, is entitled to and empowered by the Florida Wrongful Death Act to recover the estate, all the damages allowed pursuant to the Florida Wrongful Death Act, section 768.16, et. seq.

3

12.    All potential beneficiaries of a recovery for wrongful death and their relationship to the deceased, MR. HAND, are identified as follows:

    a.    PHYLLIS A. HAND the wife of MR. HAND.

13.    At all times material hereto, MR. HAND was an inmate in the care and custody of the Defendant DOC at Lake Butler Prison, Reception and Medical Center ("RMC").

14.    At all times material, the Defendant DOC was responsible for the care and treatment of MR. HAND at its facility at Lake Butler and had a nondelegable duty to use reasonable care in the operation of RMC and the supervision and protection of prisoners in its custody.

15.    At all times material hereto, Defendant CENTURION OF FLORIDA, LLC ("Defendant CENTURION"), was the health care company contracted with DOC to provide medical care and treatment to prison inmates.

16.    Upon information and belief, Defendant MHM HEALTH PROFESSIONALS, INC., ("MHM") is a foreign corporation, and at all times material contracted and/or was otherwise associated with Defendant DOC, Defendant CENTURION, Defendant DAVID E. RODRIGUEZ-RIVERA, M.D., a.k.a. DAVID RODRIGUEZ, M.D., Defendant JEAN MAX SAINT CHARLES, M.D., Defendant JUAN SANTIAGO, M.D., aka JUAN SANTIAGO RIVERA, M.D., Defendant PETER FABIAN EDEMEKONG, M.D., Defendant DRIANNA

NISHELL LAW, ARNP to provide medical care and treatment to prison inmates, including those admitted to RMC

17. Either Defendant DOC, Defendant CENTURION, and/or Defendant MHM employed or otherwise contracted with nurses, nursing assistants, physicians and nurse practitioners, and correctional officers who cared for and/or supervised MR. HAND at RMC.

18. At all times material hereto, Defendant DAVID E. RODRIGUEZ-RIVERA, M.D. ("Defendant RODRIGUEZ-RIVERA") was a medical doctor at RMC and rendered health care services to MR. HAND while admitted to RMC.

19. At all times material hereto, Defendant JEAN MAX SAINT CHARLES, M.D. ("Defendant SAINT CHARLES") was a medical doctor at RMC and rendered health care services to MR. HAND while admitted to RMC.

20. At all times material hereto, Defendant JUAN SANTIAGO RIVERA, M.D. ("Defendant SANTIAGO") was a medical doctor at RMC and rendered health care services to MR. HAND while admitted to RMC.

21. At all times material hereto, Defendant PETER FABIAN EDEMEKONG, M.D. ("Defendant EDEMEKONG") was a medical doctor at RMC and rendered health care services to MR. HAND while admitted to RMC.

/ / /

/ / /

22.     At all times material hereto, Defendant DRIANNA NISHELL LAW, ARNP, ("Defendant LAW") was a registered nurse at RMC and rendered health care services to MR. HAND while admitted to RMC.

## FACTS

### MR. HAND'S TREATMENT FROM DECEMBER 6, 2016 TO APRIL 13, 2017

23.     On Tuesday, December 6, 2016, MR. HAND was admitted into Defendant DOC's RMC inpatient hospital for treatment of right palatal tonsillar cancer, squamous type, which was diagnosed during his incarceration in the fall of 2016.

24.     During his admission, MR. HAND received chemotherapy and radiation treatment to treat his cancer diagnosis.

25.     On Monday, April 10, 2017, MR. HAND was seen by an ENT physician who deemed that MR. HAND did not have cancer and there was no evidence of recurrent disease.

26.     On Thursday, April 13, 2017, after receiving chemotherapy and radiation treatment, and being deemed cancer free, Defendant SAINT CHARLES discharged MR. HAND from the inpatient hospital at RMC and ordered that MR. HAND be returned to general population.

/ / /

/ / /

6

27.    At the time of his discharge on Thursday, April 13, 2017, Defendant SAINT CHARLES noted that MR. HAND was afebrile, in stable condition, and did not have any acute distress.

28.    Defendant SAINT CHARLES discharge order ordered that MR. HAND be discharged to the compound, to follow up with an ENT, follow up with a plastic surgeon, follow up with his oncologist in three months, and follow up his primary care physician in one week.

29.    Defendant SAINT CHARLES discharge plan and respective physician orders, however, did not include any plan for infection risk or control, physical therapy, or MR. HAND's nursing needs.

30.    Defendant SAINT CHARLES's plan also did not address MR. HAND's ability to ambulate, care for himself, or maintain his activities of daily living.

31.    Defendant SAINT CHARLES similarly did not mention any deep vein thrombosis prevention plan.

32.    Upon information and belief, Defendant SAINT CHARLES knew that failing to conduct an adequate discharge plan prior to MR. HAND's transfer to general population on Thursday, April 13, 2017 based upon MR. HAND's recent medical history and treat would increase MR. HAND's risk of developing serious illness and infection and Defendant SAINT CHARLES chose to do so anyways.

**THURSDAY, APRIL 13, 2017 TO FRIDAY, MAY 5, 2017**

33.   On Wednesday, April 19, 2017, MR. HAND, as advised, followed up and presented to his primary care doctor with all normal vital signs and no complaints.  The health record indicated that MR. HAND stated to his primary care physicians that "I am fine. I need dentures."  MR. HAND was advised to return on Wednesday, October 4, 2017 for follow up.

34.   On Thursday, April 20, 2017, MR. HAND made an inmate request for dentures so that he could "eat like he should."  Notably, there were no health complaints noted by MR. HAND.

35.   On Wednesday, May 3, 2017, MR. HAND, as advised, followed up and presented to with the plastic surgeon for a skin lesion on his left ear.  After reviewing MR. HAND's medical history with him, the plastic surgeon examined the lesion on his ear and determined it needed to be surgically removed.   The plastic surgeon was unable to perform the procedure that day due to requirements of prior approval before scheduling a surgical procedure involving an inmate patient.  As such, the plastic surgeon completed a Request for Prior Approval of Health Care Services form, designating the surgery as "[u]rgent" and requesting that it be scheduled at the RMC's Mobile Surgical Unit in Lake Butler, Florida, and submitted the form on May 3, 2017.

/ / /

36.     During his Wednesday, May 3, 2017 appointment, MR. HAND presented with normal vital signs and no complaints.

37.     On Monday, May 5, 2017, CT scans of MR. HAND's head, neck, and chest were performed in accordance with his discharge on April 13, 2017.

38.     Like all reports for all tests to follow, no follow-up was given, and no physician even acknowledged the reports until Thursday, May 11, 2017.

**FRIDAY, MAY 5, 2017**

39.     On Monday, May 5, 2017, at approximately 12:35 pm, MR. HAND was evaluated by Defendant LAW with complaints of nausea, vomiting, and diarrhea for the past 15 hours. MR. HAND complained of a frontal lobe headache. MR. HAND vitals were charted as follows: blood pressure 105/80, pulse 114, oxygenation 95%, and temperature 98.4 degrees Fahrenheit.

40.     Defendant LAW noted MR. HAND's past medical history of tonsillar cancer and recent chemotherapy but failed to include his COPD or hospital-acquired pneumonia.

41.     Per Defendant LAW's documentation, MR. HAND was receiving chemotherapy, which he was not at the time.

42.     Defendant LAW documented the presence of a PICC line without a dressing but did not describe it further other than it had "fell out".

/ / /

43.     Defendant LAW assessed MR. HAND as having gastroenteritis, without addressing the headache etiology, or prior hospital-acquired pneumonia.

44.     Defendant LAW failed to address any source of potential infection.

45.     Defendant LAW's treatment plan included Zofran and Ibuprofen, a medication known to cause/exacerbate gastrointestinal problems that is contraindicated in a patient with stomach problems.

46.     Despite his history and the development of a serious medical condition that required urgent medical treatment and evaluation, MR. HAND was discharged to the compound without any assessment of investigation as to any source of potential infection.

47.     No antibiotics were ordered for or administered to MR. HAND.

48.     Despite seeing MR. HAND on Friday, May 5, 2017, Defendant LAW did not write any orders until Monday, May 8, 2017.

**MONDAY, MAY 8, 2017**

49.     On May 8, 2017, at approximately 10:12 a.m., MR. HAND was seen by K. Ginn, RN.

50.     Nurse Ginn completed an "Abdominal Pain Protocol" and "Vomiting Diarrhea Protocol."

51.     MR. HAND's medical history was left incomplete and did not include his COPD or previously acquired hospital-acquired pneumonia.

52.    The nurse documented MR. HAND's chief complaint of nausea, vomiting, and severe abdominal pain that was documented to have begun on May 4, 2017.

53.    MR. HAND explained that he was experiencing crampy pain, and green, watery, and acidic smelling stools.

54.    MR. HAND explained that he had a decreased appetite and it was noted that he was experiencing hypoactive bowel sounds in all four quadrants.

55.    MR. HAND's vitals were listed as: blood pressure 132/79, pulse 102, respirations 16, oxygenation 96%, and temperature 98.4 degrees Fahrenheit.

56.    MR. HAND was unable to stand for Nurse Ginn to take his blood pressure.

57.    Nurse Ginn charted skin tenting and that the mucous membranes in his mouth were dry.  These signs are indicative of dehydration, but Nurse Ginn nor Defendant LAW, who co-signed the treatment orders on Monday, May 8, 2017, treated the dehydration.

58.    According to the Abdominal Pain Protocol and MR. HAND's complaints of severe pain and vomiting a clinician was to be notified immediately.

59.    Also, according to the Vomiting/Diarrhea Protocol and MR. HAND's complaints of severe pain, skin tenting, and dry mucous membranes in his mouth a clinician was to be notified immediately.

60.     On Monday, May 8, 2017, there are orders by Nurse Ginn, also signed by Defendant LAW, for Ibuprofen and Zofran and to pull the PICC line, but no further care is documented until he was admitted to RMC on Thursday, May 11, 2017.

61.     Despite his history and the development of a serious medical condition that required urgent medical treatment and evaluation, MR. HAND was discharged to the compound without any assessment or investigation as to any source of potential infection.

62.     No antibiotics were ordered for or administered to MR. HAND.

63.     Based upon his symptoms and complaints of severe pain and vomiting for over four days and his development of a serious medical condition, a physician was to be notified immediately.

64.     Nursing staff documented the Defendant EDEMEKONG was notified, but the time at which that occurred was blank.

65.     There are no orders documented from Defendant EDEMEKONG in the health record, and nursing staff did not initiate any nursing protocol orders for MR. HAND.

66.     It does not appear that Defendant EDEMEKONG was notified and no physician ever reviewed the chart and no follow-up or medical treatment was given.

/ / /

67.     If nursing staff did contact Defendant EDEMEKONG, then he/she should have noted the time on the nursing protocol, along with the provider's orders (or "no orders given").

68.     In the alternative, if nursing staff were not able to contact Defendant EDEMEKONG, then that should have been noted in the health record, and MR. HAND should have had an urgent referral to a provider on May 8, 2017, due to his symptoms of severe abdominal pain, nausea, vomiting, diarrhea, headache and dehydration, especially with his cancer history.

69.     Bottom line, MR. HAND was neither seen by Defendant EDEMEKONG nor seen by any other physician until he was admitted to RMC on Thursday, May 11, 2017, as an inpatient.

70.     MR. HAND's presentation on May 8, 2017 mandated treatment and was so obvious that even a lay person would easily recognize the necessity for a doctor's attention, that, if left unattended, posed a substantial risk of serious harm to MR. HAND.

71.     Defendant LAW had knowledge of MR. HAND's serious medical condition as indicated by his presentation on May 5, 2017 and worsening condition and presentation on May 8, 2017 but clearly disregarded the risks associated with the serious medical condition based upon her diagnosis and orders.

/ / /

72.     Defendant LAW's treatment plan of MR. HAND included a follow-up appointment with his primary care doctor in a week, but Defendant LAW failed to order that appointment.

73.     Despite MR. HAND's presentation with a multitude of symptoms indicating a serious medical condition and infection, Defendant LAW ignored the signs and symptoms and chose not to perform a potential infectious disease assessment and chose not to prescribe any antibiotics to treat MR. HAND's serious medical condition.

### THURSDAY, MAY 11, 2017

74.     From May 8, 2017 through May 11, 2017, MR. HAND's serious medical condition was ignored by Defendants and MR. HAND continued to significantly deteriorate, such that he was unresponsive and/or unable to leave his bunk and/or unable to ask for help.

75.     During this time, Defendant LAW, Defendant EDEMEKONG, Defendant DOC's employees, agents, and staff, Defendant CENTURION's employees, agents, and staff, and Defendant MHM's employees, agents, and staff knew of MR. HAND's serious medical condition and his deterioration but acted with deliberate indifference and failed to do anything to treat the worsening serious medical condition.

/ / /

76.     Sometime on or about May 11, 2017, MR. HAND's bunkmate notified a Defendant DOC employee and/or Defendant CENTURION and/or Defendant MHM agent or employee that MR. HAND had been unresponsive in his bed for approximately a day to two days.

77.     On Thursday, May 11, 2017, at approximately 9:26 p.m., MR. HAND was admitted to the RMC, as an inpatient, by Defendant RODRIGUEZ-RIVERA, with a serious medical condition, critically ill with alleged diagnoses of acute dehydration and failure to thrive.

78.     There is no documentation in the health record regarding how or why MR. HAND came to be admitted to the hospital, only that he arrived via wheelchair with an IV placed in his wrist.

79.     MR. HAND's admitting vitals were temperature 99.3 degrees Fahrenheit, pulse 100, respirations 17, and blood pressure 109/70.

80.     MR. HAND's vital signs during this time and medical history reflect that MR. HAND had a serious medical condition with an ongoing fever and infection.

81.     MR. HAND disclosed in his admission history and physical that he had not eaten in two days and that he was not able to eat.

/ / /

/ / /

82.     At that time of his admission, MR. HAND was unable to legibly sign his name for admission, was in a severely weak and guarded condition and unable to use the urinal.

83.     This is MR. HAND's signature upon admission to RMC on May 11, 2017:



84.     This is MR. HAND's signature on May 12, 2017, the day after admission:



85.     For comparison, this is MR. HAND's signature on May 5, 2017, less than one week before his admission:

86.    For further comparison, this is MR. HAND's signature on April 20, 2017:



In furtherance of this authorization, I (we) do hereby waive all provisions of law and privileges relating to the disclosures hereby authorized. I acknowledge the extent of my authorization of release as to the records and information denoted in paragraphs A, B, C, D and E by initialing the appropriate box(es) above.

SIGNATURE OF PATIENT (Guardian or Statutorily Authorized Representative, when required)     Date

87.    MR. HAND's presentation on Thursday, May 11, 2017 mandated treatment and was so obvious that even a lay person would easily recognize the necessity for a doctor's attention, that, if left unattended, posed a substantial risk of serious harm to MR. HAND.

88.    On Thursday, May 11, 2017, Defendant RODRIGUEZ-RIVERA had knowledge of MR. HAND's serious medical condition as indicated by his admission to RMC but clearly disregarded the risks associated with the serious medical condition based upon his admitting diagnosis and physician orders.

89.    Despite MR. HAND's presentation with a multitude of symptoms indicating a serious infection, Defendant RODRIGUEZ-RIVERA with deliberate indifference to the known risks of serious harm to MR. HAND, ignored the signs and symptoms of a worsening infection and chose not to perform a potential infectious disease assessment and chose not to prescribe any antibiotics to treat the infection.

/ / /

/ / /

17

90.    The nursing staff indicated upon admission at approximately 11:00 p.m. on Thursday, May 11, 2017, that MR. HAND was continent of both bowel and bladder.

91.    At 11:45 p.m., Defendant RODRIGUEZ-RIVERA was notified that his fever reached 101.9 degrees Fahrenheit.

92.    Defendant RODRIGUEZ-RIVERA chose not to return to see MR. HAND, but rather decided to take an easier course of treatment and simply ordered Tylenol to be administered.

93.    Even at this time, Defendant RODRIGUEZ-RIVERA continued to choose not to consider any source of potential infection and choose not to order antibiotics to treat MR. HAND's worsening serious medical condition.  Again, Defendant RODRIGUEZ-RIVERA with deliberate indifference to the known risks of serious harm to MR. HAND, ignored the signs and symptoms of a worsening infection and chose not to perform a potential infectious disease assessment and chose not to prescribe any antibiotics to treat the infection.

94.    On Thursday, May 11, 2017, MR. HAND was only administered medications for nausea, but no other medications were provided.

95.    MR. HAND was only seen by a physician one time on Thursday, May 11, 2017 despite his severely worsening condition.

/ / /

## FRIDAY, MAY 12, 2017

96.     At 5:30 a.m. the next day on Friday, May 12, 2017, MR. HAND's blood was collected for a CBC panel, which would allow the health care providers, if reviewed, an opportunity to further evaluate MR. HAND's overall health and detect a variety of diseases and conditions, such as infections.

97.     Between 6:00 a.m. and 8:00 a.m., the nursing staff notated on two separate occasions that MR. HAND's serious medical condition continued to worsen and that he was incontinent of bowel and that MR. HAND explained that he was too weak to get out of bed.

98.     At approximately 8:47 a.m., MR. HAND was seen by Defendant SAINT CHARLES who without addressing any source for potential infection, other than suspecting gastroenteritis, diagnosed him as being dehydrated.

99.     Like Defendant RODRIGUEZ-RIVERA, Defendant EDEMEKONG and Defendant LAW before him, Defendant SAINT CHARLES ignored the signs and symptoms of MR. HAND's worsening infection and serious medical condition, chose not to perform a potential infectious disease assessment to identify why MR. HAND's condition had significantly worsened over the past week, and chose to address MR. HAND's serious medical condition by pursuing easier but less effective treatment (i.e. adopting the prior health care providers diagnoses and treatment plan despite the worsening condition).

100.   Per the nursing notes, no antibiotics were administered to MR. HAND because they were awaiting PICC line placement.

101.   At approximately 12:00 p.m., MR. HAND's fever rose to about 101 degrees Fahrenheit.  There is no record indicating a physician follow up on this.

102.   At approximately 3:38 pm, MR. HAND's blood test results were available for all health care workers providing care to MR. HAND.

103.   The CBC blood results indicated elevated white blood cell count, elevated POLYS, and reduced LYMPHS objectively identifying a serious infection and serious medical condition.

104.   The results were available for review from Friday, May 12, 2017 but no physician reviewed the records until three days later, after the weekend on Monday, May 15, 2017 when it was too late.  During these three days, MR. HAND's serious medical condition substantially worsened, but his treatment plan remained the same as when he was admitted.

105.   Defendant EDEMEKONG, Defendant LAW, Defendant SAINT CHARLES, and Defendant RODRIGUEZ-RIVERA did not review the CBC blood test results when they were made available on Friday, May 12, 2017.  Accordingly, they ignored vital information that would have helped them update their diagnosis and treatment plan of MR. HAND, and/or transfer MR. HAND, and/or to provide adequate treatment for MR. HAND's serious medical condition.

106.   Rather, Defendant EDEMEKONG, Defendant LAW, Defendant SAINT CHARLES, and Defendant RODRIGUEZ-RIVERA acted with deliberate indifference to MR. HAND's serious medical condition, and ignored the substantial risks associated with their failure to read the CBC test results and accurately diagnosis MR. HAND, their failure to provide adequate medical treatment to treat the worsening serious medical condition.  Each Defendant totally failed to diagnose MR. HAND and update his treatment plan, and/or transfer MR. HAND, and/or to provide adequate treatment for MR. HAND's serious medical condition.

107.   At 8:45 p.m., four days after originally ordered, a replacement PICC line was attempted to be placed in MR. HAND's right arm. Placement in his right arm, however, was aborted due to occlusion and instead placed in his left brachial vein.

108.   MR. HAND was only seen by a physician one time on Friday, May 12, 2017 despite his severely worsening condition.

## SATURDAY, MAY 13, 2017

109.   On Saturday, May 13, 2017, at 12:00 am, MR. HAND's fever was still present and was nearly 101 degrees Fahrenheit.  But MR. HAND was not seen by a physician to address his worsening condition.

110.   The nursing staff noted that MR. HAND continued to be incontinent of bowel and bladder, now for at least 24 hours.

111.   The nursing staff noted that MR. HAND had very limited sensory perception, was bedrest with very limited mobility, and suffered from inadequate nutrition.

112.   The nursing staff noted that MR. HAND now required assistance with all activities of daily living.

113.   At 1:30 pm. Defendant SANTIAGO saw MR. HAND one time at 1:30 pm. MR. HAND's vital signs were blood pressure 127/82, pulse 116, respirations 19, temperature 103, oxygenation 96%.

114.   MR. HAND's vital signs during this time reflected an obvious serious medical condition with an ongoing fever and infection that was worsening as time progressed.

115.   However, Defendant SANTIAGO, without looking at the CBC test results that had been available to him for one day simply ordered to maintain the same treatment protocol as ordered upon admission and to administer Tylenol for the worsening fever.  He did not address the worsening symptoms, identify the source of the infection, or treat the infection.

116.   At 3:00 p.m., the nursing staff noted that MR. HAND's PICC line fluttered indicating incorrect placement of the PICC line.

117.   At 7:00 p.m., MR. HAND's vital signs were blood pressure 125/98, pulse 102, respirations 22, temperature 102.9, and oxygenation 97%, however, there

was no physician response to MR. HAND's worsening serious medical condition and MR. HAND did not see a physician until 1:40 p.m. the next day consistent with his one doctor visit each day during his admission.

118.   Further on Saturday, May 13, 2017, per the nursing notes, no antibiotics were administered to MR. HAND because they were awaiting PICC line placement.

119.   Despite MR. HAND's rapid deterioration and worsening serious medical condition, as obviously indicated by MR. HAND's presentation and the nursing notes, Defendant SANTIAGO failed to address any source of potential infection.   Defendant SANTIAGO failed to review the CBC blood results that clearly and objectively identified that MR. HAND was suffering from a serious infection and serious medical condition and required immediate help.

120.   Like Defendant RODRIGUEZ-RIVERA, Defendant EDEMEKONG, Defendant LAW, and Defendant SAINT CHARLES before him, Defendant SANTIAGO chose to ignore MR. HAND's serious medical condition and chose to address MR. HAND's serious medical condition by pursuing easier but less effective treatment.

121.   Further, on Saturday, May 13, 2017, Defendant EDEMEKONG, Defendant LAW, Defendant SAINT CHARLES, and Defendant RODRIGUEZ-RIVERA, like Defendant SANTIAGO, failed to review the CBC blood test results that had been available since Friday, May 12, 2017, and totally failed to diagnose

MR. HAND and update his treatment plan, and/or transfer MR. HAND, and/or to provide adequate treatment for MR. HAND's serious medical condition.

122.   As of Saturday, May 13, 2017, Defendant EDEMEKONG, Defendant LAW, Defendant SAINT CHARLES, Defendant RODRIGUEZ-RIVERA, and Defendant SANTIAGO, all chose to ignore the obvious worsening of MR. HAND's serious medical condition and the objective test results identifying a clear infection, and therefore did not provide MR. HAND any treatment for his serious medical condition that was killing and eventually killed MR. HAND.

123.   MR. HAND was only seen by a physician one time on Saturday, May 13, 2017 despite his severely worsening condition.

### SUNDAY, MAY 14, 2017

124.   On Sunday, May 14, 2017, the nursing staff noted that MR. HAND's speech was slurred, and that MR. HAND remained incontinent of bowel and bladder, now for at least 48 hours.

125.   The nursing staff noted that MR. HAND required assistance with all activities of daily living and a continued generalized overall weakness.

126.   Defendant SANTIAGO's progress note at 1:40 p.m. indicated that despite the clear deterioration of MR. HAND's health and serious medical condition, Defendant SANTIAGO's plan remained the same "to follow current treatment and follow close for any changes".  Still Defendant SANTIAGO failed to address or

consider any type of infection and chose to ignore the obvious changes noted by the nursing staff.

127. Defendant SANTIAGO did not write any physician orders on Sunday, May 14, 2017.

128. Again, Defendant SANTIAGO failed to review the CBC blood results that clearly and objectively identified that MR. HAND was suffering from a serious infection and serious medical condition.

129. Despite MR. HAND's even more rapid deterioration and worsening serious medical condition, as obviously indicated by MR. HAND's presentation and the updated nursing notes and observations, Defendant SANTIAGO failed to address any source of potential infection. Defendant SANTIAGO failed to review the CBC blood results that clearly and objectively identified that MR. HAND was suffering from a serious infection and serious medical condition.

130. Further, on Sunday, May 14, 2017, Defendant EDEMEKONG, Defendant LAW, Defendant SAINT CHARLES, and Defendant RODRIGUEZ-RIVERA, like Defendant SANTIAGO, failed to review the CBC blood test results that had been available since Friday, May 12, 2017, and totally failed to diagnose MR. HAND and update his treatment plan, and/or transfer MR. HAND, and/or to provide adequate treatment for MR. HAND's serious medical condition.

131.   As of Sunday, May 14, 2017, Defendant EDEMEKONG, Defendant LAW, Defendant SAINT CHARLES, Defendant RODRIGUEZ-RIVERA, and Defendant SANTIAGO, all chose to ignore the obvious worsening of MR. HAND's serious medical condition and the objective test results identifying a clear infection, and therefore did not treat the serious medical condition that was killing and eventually killed MR. HAND.

132.   Despite the rapid deterioration of MR. HAND's serious medical condition, Defendant SANTIAGO's plan remained the same "to follow current treatment and follow close for any changes".

133.   Defendant SANTIAGO continued to ignore MR. HAND's serious medical condition and his worsening symptoms and chose to address MR. HAND's serious medical condition by pursuing easier but less effective treatment.

134.   Again, MR. HAND was only seen by a physician one time on Sunday, May 14, 2017 despite his severely worsening condition.

**MONDAY, MAY 15, 2017**

135.   On Monday, May 15, 2017, the nursing staff noted that MR. HAND was now disoriented to person, place, thing, time, and situation and lethargic.

136.   The nursing staff noted that MR. HAND's speech was slurred, now for at least 24 hours, and inappropriate.

/ / /

137.   The nursing staff noted that MR. HAND continued to be incontinent of bowel and bladder, now for at least three days, with hypoactive bowel sounds.

138.   The nursing staff continued to note that MR. HAND was suffering from a generalized weakness overall.

139.   The nursing staff noted that MR. HAND was now total care and assistance was required with all activities of daily living.

140.   The nursing staff noted that MR. HAND is on total parenteral nutrition with difficulty swallowing.

141.   The nursing staff noted that MR. HAND's condition continued to deteriorate, as he was agitated, restless, had slurred speech, was immobile, and he was found to be at high risk for falls even though he was assessed only three days before as being a low risk. MR. HAND was assessed as needing "total care."

142.   The nursing staff also noted diminished breath sounds in the lung exams and he needed additional oxygen.

143.   A scab was noted on MR. HAND's right hip for the first time, indicating a skin breakdown and/or pressure wound had developed.

144.   The nursing staff noted that at 9:00 a.m., MR. HAND's worsening condition was communicated to Defendant SANTIAGO.

145.   At 10:30 a.m., Defendant SANTIAGO noted reviewing the Friday, May 12, 2017 CBC laboratory results, but he did not mention the abnormal values

or elevated white blood cell count and did not change MR. HAND's treatment plan other than to treat a newly acquired pressure sore.

146.   MR. HAND's vital signs during this time reflect a serious medical condition with an ongoing fever and infection.

147.   Elsewhere in the records, is another copy of CBC laboratory results, which included a handwritten note by Defendant EDEMEKONG on Monday, May 15, 2017 that the results were OK to file and to follow up with Defendant LAW on Tuesday, May 16, 2017.  Defendant EDEMEKONG did not write any physicians orders for follow up.

148.   No follow-up was ever done by any medical staff at RMC.

149.   A new dual lumen PICC line was placed in the afternoon of Monday, May 15, 2017, but there is no mention of any testing of the original PICC line for infection.

150.   The only modifications Defendant SANTIAGO made in MR. HAND's treatment plan on Monday, May 15, 2017, was to treat a newly developed pressure sore on his right hip.  He continued to ignore the glaring and obvious infection that was killing MR. HAND.

151.   Despite MR. HAND's even more rapid deterioration and worsening serious medical condition, as obviously indicated by MR. HAND's presentation and the updated nursing notes and observations, Defendant SANTIAGO failed to

address any source of potential infection.  Defendant SANTIAGO failed to review the CBC blood results that clearly and objectively identified that MR. HAND was suffering from a serious infection and serious medical condition.

152.  Further, on Monday, May 15, 2017, Defendant EDEMEKONG, Defendant LAW, Defendant SAINT CHARLES, and Defendant RODRIGUEZ-RIVERA, and Defendant SANTIAGO failed to acknowledge the significant findings of the CBC blood test results that had been available since Friday May 12, 2017, and totally failed to diagnose MR. HAND and update his treatment plan, and/or transfer MR. HAND, and/or to provide adequate treatment for MR. HAND's serious medical condition.

153.  As of Monday, May 15, 2017, Defendant EDEMEKONG, Defendant LAW, Defendant SAINT CHARLES, Defendant RODRIGUEZ-RIVERA, and Defendant SANTIAGO, all chose to ignore the obvious worsening of MR. HAND's serious medical condition and the objective test results identifying a clear infection, and therefore did not treat the serious medical condition that was killing and eventually killed MR. HAND.

154.  There were no changes to the treatment of MR. HAND's significantly worsening serious medical condition.  The serious medical condition was ignored, and GLENN MICHELL HAND was left to deteriorate further, to the point of no return on the morning of Tuesday, May 16, 2017.

### TUESDAY, MAY 16, 2017

155.   At 8:30 am, the nursing staff notes that MR. HAND is disoriented and unresponsive.  His vital signs were 56% oxygenation, blood pressure 130/81, pulse 120, 35 respirations, and a temperature of 100 degrees Fahrenheit.

156.   The nursing staff notes that MR. HAND had an abnormal heart rate and rhythm and bilateral calf redness, tenderness, and swelling.

157.   The nursing staff, again, noted diminished breath sounds.

158.   MR. HAND was placed on a ventilator, the code team was called, and MR. HAND was sent via EMS to UF Health Shands Hospital ("Shands") in Gainesville, Florida with a stroke alert and observed "seizure like activity".

### WEDNESDAY, MAY 17, 2017 – THURSDAY, JUNE 1, 2017

159.   At Shands, MR. HAND underwent several diagnostic and laboratory tests that indicated that MR. HAND was suffering from extensive colonization of his body by Pseudomonas, one of the most common hospital-acquired bacteria and that his heart, brain, liver, and other vital organs had been seeded with septic emboli. MR. HAND was in respiratory failure and required intubation. MR. HAND was diagnosed with a large middle cerebral artery (MCA) infarct on the left side with multiple bilateral infarcts, endocarditis with mitral valve vegetation, pseudomonas, bacterial meningitis, ventriculitis, and sepsis with multiple organ dysfunction.

160.   The physicians at Shands determined that the source of the infection that caused MR. HAND's serious medical condition was the PICC line.

161.   This was the source of the infection that Defendant LAW, Defendant EDEMEKONG, Defendant SANTIAGO, Defendant SAINT CHARLES, and Defendant RODRIGUEZ-RIVERA totally failed to diagnose or consider despite the glaring and obvious signs, symptoms, and the unread and ignored diagnostic tests clearly indicated.

162.   On or about Wednesday, May 31, 2017, upon consultation with MR. HAND's medical team at Shands, his family decided on a withdrawal of care based on his poor prognosis.

163.   MR. HAND was extubated and was transferred back to RMC on Wednesday, May 31, 2017 with comfort care goals only.

164.   On or about Thursday, June 1, 2017, at 1:35 a.m., MR. HAND died and was pronounced dead by Defendant RODRIGUEZ-RIVERA at RMC.

165.   On Thursday, June 1, 2017, Defendant RODRIGUEZ-RIVERA determined MR. HAND's cause of death was sepsis and respiratory failure.

166.   MR. HAND's death came just approximately three months before his release from his eighteen-month prison sentence.

/ / /

/ / /

## COUNT I
## NEGLIGENCE v. DOC

167.   Plaintiff realleges and incorporates by reference paragraphs 1-165 as if set forth fully herein and further states:

168.   This claim is brought pursuant to Florida's Wrongful Death Act, section 768.16, et. seq., Florida Statutes.

169.   At all times relevant hereto, MR. HAND was in the custody and control of the Defendant DOC, as an inmate at RMC.

170.   At that time and place the Defendant DOC had in its employment Correctional Officers and other staff, who were at all times material herein working within the course and scope of their employment with the Defendant DOC.

171.   From approximately May 9, 2017 until May 11, 2017, MR. HAND was unresponsive and unable to care for himself and/or ask for any type of medical assistance.

172.   On or about May 11, 2017, MR. HAND's bunk mate alerted DOC staff that he was unresponsive and had been unresponsive for a significant period of time.

173.   At all times material hereto, Defendant DOC had a non-delegable duty to use reasonable care in the operation of its facility and to use reasonable care in providing for the care, treatment and supervision of the inmates in its custody.

174.   Defendant DOC is vicariously liable for the negligence of its employees, agents, and/or servants.

175.   Defendant DOC is directly liable for its failure to screen, train, retrain, supervise, discipline and terminate its employees, agents, and/or servants.

176.   During said period of time, DOC staff failed to properly monitor, supervise and/or assess MR. HAND and failed to call for medical staff of any sort to check on MR. HAND's condition and/or failed to timely transfer MR. HAND to be evaluated and/or failed to see that MR. HAND receive any care or treatment, during which time he was incapacitated and unable to request or ask for help and/or aid and/or medical assistance, which said failures did cause and contribute to MR. HAND's death.

177.   As a direct and proximate result of Defendant DOC's negligence and that of its employees, MR. HAND died on or about June 1, 2017.

178.   WHEREFORE, Plaintiff, the ESTATE OF GLENN MITCHELL HAND, by and through PHYLLIS A. HAND, Personal Representative seeks relief as noted below.

## COUNT II
## DELIBERATE INDIFFERENCE & FAILURE TO TREAT UNDER 42 U.S.C. § 1983 v. CENTURION

179.   Plaintiff realleges and incorporates by reference paragraphs 1-165 as if set forth fully herein and further states:

180.   Plaintiff is entitled to relief against Defendant CENTURION for a systemic failure to treat known serious medical conditions in violation of the Eighth

Amendment to the U.S. Constitution, as further set out in the General Allegations, above.

181.   Plaintiff is entitled to relief against Defendant CENTURION because it was deliberately indifferent in maintaining policies and procedures, customs and practices that made constitutional violations such as those suffered by MR. HAND substantially certain to happen and ignored a history of known such abuses.

182.   Defendant CENTURION had a duty to provide medical treatment for a known serious medical condition under the Eighth Amendment to the U.S. Constitution.

183.   Defendant CENTURION was also deliberately indifferent in failing to treat a known serious medical condition in that it also had a custom and practice of delaying and denying care to maximize its profits and of demanding that its employees make decisions calculated to save money rather than to provide needed medical care, including decisions that delayed or denied care, resulting in more serious injuries than otherwise would have been suffered and/or death.

184.   Defendant CENTURION took over the contract for prisoner health care from Corizon, LLC in 2016 and hired most of Corizon's medical staff, medical department organization and continued the former health care contractor's denial

and delay of care.   Corizon's prior policy and practice of denying prisoners medical care is evidenced by the following:

a.      The Corizon contract became operational in 2013. As early as 2014, the DOC expressed concern that audits showed Corizon failing to provide care to prisoners.

b.      In 2015, DOC Secretary Julie Jones reported that private health care providers, including Corizon, were not performing "at the level that's covered by their contracts." By late 2015, Corizon was being fined by the State of Florida for failure to live up to its contract obligations to provide adequate health care to prisoners.

c.      Corizon failed to provide, or cooperated in, maintained, enforced, tolerated, or condoned, the failure to provide timely and adequate medical care to an inmate suffering a life-threatening medical condition.

d.      Corizon had a custom of basing medical care on cost rather than medical judgment in deciding what treatment to provide and when it should be provided, and a custom of not providing more expensive care to prisoners except when the condition had reached an emergency stage and sometimes not even then.

/ / /

/ / /

e.     As a matter of policy, costly care was generally provided, if ever, only in life- threatening situations without regard for the pain and debilitation to the patient.

f.     Corizon has enforced this policy, practice, and custom around the nation so that Corizon has been terminated as a prison health care provider in several states.

g.     In Florida, one year after Corizon took over prisoner medical care, then-DOC Secretary Michael Crews sent a letter to Corizon threatening to withhold payment and remove facilities from Corizon control if improvements were not made to the level of care being provided to Florida prisoners.

h.     The letter stated that Corizon's "level of care continues to fall below the contractually required standard." Specifically, Crews identified failures in patient care issues, utilization management, and communication.

185.  Defendant CENTURION has a policy and custom of failing to provide medical care and medical treatment for serious medical conditions as follows:

a.     Defendant CENTURION has continued the Corizon policy of denying and delaying health care to prisoners – as little care as possible, as late as possible, as is evidenced by the fact that MR. HAND was not transferred to a facility to address his serious medical condition until he was having seizures and was completely unresponsive and in a vegetative state, after approximately two weeks

of severely deteriorating condition;

   b.  Defendant CENTURION has a national corporate policy to provide prisoners as little care as possible as late as possible in order to maximize profits;

   c.  Because Defendant CENTURION encourages employees to minimize health care cost even when it put prisoners at risk, medical staff felt free to deny care;

   d.  Defendant CENTURION short-staffs medical positions so inmates, such as MR. HAND, are forced to wait hours or are never seen by a medical physician;

   e.  Defendant CENTURION has a practice of denying care then fabricating a "refusal of care," writing "refused to sign" where the inmate's signature should be.

   f.  Defendant CENTURION fails to discipline medical staff for withholding medical care; and

   g.  Defendant CENTURION has a practice of under-paying medical doctors but permitting them to work short hours, so they are rarely available to inmates.

  186. That during the period of time that MR. HAND was a patient of the Defendant CENTURION, Defendant CENTURION was deliberately indifferent in

failing to provide needed medical care for a known serious medical condition. Said deliberate indifference included, but is not limited to the commission and/or omission of the following acts:

a.     Maintaining policies of denial, delay, and minimization of care in order to cut costs and maximize profits in its Florida contracts and across the nation.

b.     Short-staffing medical positions needed for timely care and treatment;

c.     Failure to provide MR. HAND timely treatment for infection or to take him to a medical facility or to medical providers who could provide treatment;

d.     Failure to ensure that MR. HAND provide proper treatment and health care follow-up of a serious medical condition, such that he lay unresponsive and unattended to for over two days in his cell;

e.     Failure to maintain policies and protocols to make sure that prisoners with serious chronic and acute medical conditions were timely treated;

f.     Failure to timely respond to changes in MR. HAND's medical condition resulting widespread infection including pseudomonas, bacterial meningitis, ventriculitis, and sepsis with multiple organ dysfunction, which caused

and lead to his death;

g.     Failure to maintain accurate records to provide a guide for treatment.

187.   That as a direct and proximate result of any of the above acts of deliberate indifference and Defendant's denial of care, MR. HAND was killed.

188.   As it was necessary for Plaintiff to hire the undersigned attorney to represent Plaintiff, Plaintiff is entitled to an award of attorneys' fees and costs.

189.   WHEREFORE, Plaintiff, the ESTATE OF GLENN MITCHELL HAND, by and through PHYLLIS A. HAND, Personal Representative seeks relief as noted below.

## COUNT III
### DELIBERATE INDIFFERENCE & FAILURE TO TREAT UNDER 42 U.S.C. § 1983 v. FRANCIS DUCOSIN ONG, M.D.; DAVID E. RODRIGUEZ-RIVERA, M.D., a.k.a. DAVID RODRIGUEZ, M.D.; JEAN MAX SAINT CHARLES, M.D.; JUAN SANTIAGO, M.D. a.k.a JUAN SANTIAGO RIVERA, M.D.; PETER FABIAN EDEMEKONG, M.D.; DRIANNA NISHELL LAW, ARNP (individual capacity claims)

*(COUNT DISMISSED, SEE COUNTS XIII - XVII)*

## COUNT IV
### MEDICAL NEGLIGENCE v. CENTURION OF FLORIDA

190.   Plaintiff realleges and incorporates by reference paragraphs 1-165 as if set forth fully herein and further states:

39

191. Defendant CENTURION had a duty to properly evaluate, diagnose, manage, monitor and treat its patient, Plaintiff, MR. HAND.

192. Defendant CENTURION had a duty to hire qualified employees, servants, and/or agents, train and retrain their employees, servants, and/or agents, and supervise their employees, servants, and/or agents to properly evaluate, diagnose, manage, monitor and treat its patient, Plaintiff, MR. HAND.

193. Defendant CENTURION, through its employees, servants and agents (actual and/or apparent), including nurses, clerks, doctors and/or ancillary staff at RMC, breached that duty and were negligent for at least the following reasons:

      a.    Failing to adequately inform MR. HAND;

      b.    Failing to adequately recognize, timely diagnose, and treat MR. HAND;

      c.    Failing to conduct adequate discharge planning prior to MR. HAND transfer to general population on April 13, 2017, which increased his risk of developing serious illness and infection;

      d.    Failing to timely, appropriately, and adequately assess and treat MR. HAND's symptoms and abnormal vital signs;

      e.    Failing to timely, appropriately, and adequately assess and treat MR. HAND's worsening condition during his RMC admission;

f.  Failing to timely order and review appropriate diagnostic and laboratory tests to further evaluate and assess MR. HAND's condition;

g.  Failing to timely administer antibiotics to treat MR. HAND's infection;

h.  Failing to coordinate care between health care providers and advocate for MR. HAND;

i.  Failing to timely provide for a transfer to a different facility for appropriate care and/or intensive care with constant medical monitoring;

j.  Failing to timely, accurately, and appropriately document MR. HAND;

k.  Failing to ensure that MR. HAND was evaluated by his primary care provider;

l.  Prescribing ibuprofen for MR. HAND, a mediation known for causing GI problems;

m.  Failing to address MR. HAND's serious complaints of abdominal pain, nausea, vomiting, and diarrhea;

n.  Falsifying health records;

o.  Failing to timely notify physicians of MR. HAND's abnormal assessments, and failing to document any follow-up assessments; and

      p.     Failing to timely, accurately, and appropriately document MR. HAND's condition in his medical records.

      q.     Failing to timely examine and see MR. HAND.

      r.     Failing to have appropriate personnel who could properly diagnose, care, and treat MR. HAND's condition;

      s.     Failing to fully or sufficiently inform MR. HAND or his wife, PHYLLIS A. HAND, that she was suffering from a severe medical condition;

      t.     Failing to inform MR. HAND or his wife, PHYLLIS A. HAND, of any medically acceptable alternative diagnostic procedures that could confirm his condition;

      u.     Failing to inform MR. HAND or his wife, PHYLLIS A. HAND, of any medically accepted alternative treatments or procedures, and of the substantial risks and hazards inherent in the conditions he was suffering from;

      v.     Failing to properly communicate and/or provide continuity of care with regard to MR. HAND's condition;

      w.     Failing to timely and properly interpret MR. HAND's diagnostic test results;

      x.     Failing to properly order follow up and provide appropriate care to MR. HAND following diagnostic test results;

y.      Failing, pursuant to common law and pursuant to Florida Statutes §766.110, to ensure that the physicians and other health care providers who treated MR. HAND, including but not limited to the those who issued physician orders and failed to follow and complete the physician orders necessary to properly diagnose and treat patients, were qualified and had sufficient knowledge and training in the treatment of MR. HAND's condition;

z.      Failing to perform diagnostic tests necessary to diagnose MR. HAND and to formulate and institute a proper treatment plan for him;

aa.     Failing to timely recognize, document, identify and/or diagnose MR. HAND;

bb.     Failing to take all other appropriate steps to ensure that MR. HAND had a proper course of treatment that met the applicable standard of care; and;

cc.     Failing to timely transfer MR. HAND to a facility with a higher level of care necessary to adequately treat and care for MR. HAND;

dd.     Failing to maintain adequate policies and procedures, or if there were, failing to follow the policies and procedures.

194.   As a direct and proximate result of the negligence described in this Count, MR. HAND died and his Estate, his surviving wife, PHYLLIS A. HAND

have suffered damages in the past and will continue to suffer in the future damages and seeks relief as noted below.

195.   Plaintiff has complied with all common law and statutory conditions precedent to bringing this action, including but not limited to all applicable provisions of the Florida Medical Malpractice Act found in Chapter 766, Florida Statutes, and all applicable provisions of Florida Statute §768.28, including timely providing the required written notice to Defendant CENTURION OF FLORIDA.

196.   Undersigned counsel for Plaintiff hereby certifies that a reasonable investigation has been undertaken in connection with this case and said investigation has given rise to a good faith belief that grounds exist for a medical negligence action against Defendant CENTURION OF FLORIDA.

### COUNT V
### MEDICAL NEGLIGENCE v. FRANCIS DUCOSIN ONG, M.D.

*(COUNT DISMISSED)*

### COUNT VI
### MEDICAL NEGLIGENCE v. DAVID E. RODRIGUEZ-RIVERA, M.D., a.k.a. DAVID RODRIGUEZ, M.D.

197.   Plaintiff realleges and incorporates by reference paragraphs 1-165 as if set forth fully herein and further states:

/ / /

/ / /

198.   Defendant RODRIGUEZ-RIVERA had a duty to render proper care and treatment to MR. HAND in accordance with the prevailing standard of care for similar health care providers under similar circumstances.

199.   Defendant RODRIGUEZ-RIVERA breached that duty and was negligent for at least the following reasons:

      a.   Failing to adequately inform MR. HAND;

      b.   Failing to adequately recognize, timely diagnose, and treat MR. HAND;

      c.   Failing to conduct adequate discharge planning prior to MR. HAND transfer to general population on April 13, 2017, which increased his risk of developing serious illness and infection;

      d.   Failing to timely, appropriately, and adequately assess and treat MR. HAND's symptoms and abnormal vital signs;

      e.   Failing to timely, appropriately, and adequately assess and treat MR. HAND's worsening condition during his RMC admission;

      f.   Failing to timely order and review appropriate diagnostic and laboratory tests to further evaluate and assess MR. HAND's condition;

      g.   Failing to timely administer antibiotics to treat MR. HAND's infection;

h.      Failing to coordinate care between health care providers and advocate for MR. HAND;

i.      Failing to timely provide for a transfer to a different facility for appropriate care and/or intensive care with constant medical monitoring; and

j.      Failing to timely, accurately, and appropriately document MR. HAND.

200.   The actions and omissions of Defendant RODRIGUEZ-RIVERA, described above, were negligent and below the applicable standards of care for physicians practicing the specialty of correctional health services pursuant to Florida Statutes section 766.102, i.e., below that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar healthcare providers.

201.   As a direct and proximate result of the negligence described in this Count, MR. HAND died and his Estate, his surviving wife, PHYLLIS A. HAND have suffered damages in the past and will continue to suffer in the future damages and seeks relief as noted below.

202.   Plaintiff has complied with all common law and statutory conditions precedent to bringing this action, including but not limited to all applicable provisions of the Florida Medical Malpractice Act found in Chapter 766, Florida

Statutes, and all applicable provisions of Florida Statute §768.28, including timely providing the required written notice to Defendant RODRIGUEZ-RIVERA.

203.   Undersigned counsel for Plaintiff hereby certifies that a reasonable investigation has been undertaken in connection with this case and said investigation has given rise to a good faith belief that grounds exist for a medical negligence action against Defendant RODRIGUEZ-RIVERA.

## COUNT VII
## MEDICAL NEGLIGENCE v. JEAN MAX SAINT CHARLES, M.D.

204.   Plaintiff realleges and incorporates by reference paragraphs 1-165 as if set forth fully herein and further states:

205.   Defendant SAINT CHARLES had a duty to render proper care and treatment to MR. HAND in accordance with the prevailing standard of care for similar health care providers under similar circumstances.

206.   Defendant SAINT CHARLES breached that duty and was negligent for at least the following reasons:

a.     Failing to adequately inform MR. HAND;

b.     Failing to adequately recognize, timely diagnose, and treat MR. HAND;

/ / /

/ / /

c.     Failing to conduct adequate discharge planning prior to MR. HAND transfer to general population on April 13, 2017, which increased his risk of developing serious illness and infection;

d.     Failing to timely, appropriately, and adequately assess and treat MR. HAND's symptoms and abnormal vital signs;

e.     Failing to timely, appropriately, and adequately assess and treat MR. HAND's worsening condition during his RMC admission;

f.     Failing to timely order and review appropriate diagnostic and laboratory tests to further evaluate and assess MR. HAND's condition;

g.     Failing to timely administer antibiotics to treat MR. HAND's infection;

h.     Failing to coordinate care between health care providers and advocate for MR. HAND;

i.     Failing to timely provide for a transfer to a different facility for appropriate care and/or intensive care with constant medical monitoring; and

j.     Failing to timely, accurately, and appropriately document MR. HAND.

207.   The actions and omissions of Defendant SAINT CHARLES, described above, were negligent and below the applicable standards of care for physicians

practicing the specialty of specialty of correctional health services pursuant to Florida Statutes section 766.102, i.e., below that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar healthcare providers.

208.   As a direct and proximate result of the negligence described in this Count, MR. HAND died and his Estate, his surviving wife, PHYLLIS A. HAND have suffered damages in the past and will continue to suffer in the future damages and seeks relief as noted below.

209.   Plaintiff has complied with all common law and statutory conditions precedent to bringing this action, including but not limited to all applicable provisions of the Florida Medical Malpractice Act found in Chapter 766, Florida Statutes, and all applicable provisions of Florida Statute §768.28, including timely providing the required written notice to Defendant SAINT CHARLES.

210.   Undersigned counsel for Plaintiff hereby certifies that a reasonable investigation has been undertaken in connection with this case and said investigation has given rise to a good faith belief that grounds exist for a medical negligence action against Defendant SAINT CHARLES.

/ / /

/ / /

/ / /

## COUNT VIII
## MEDICAL NEGLIGENCE v. JUAN SANTIAGO, M.D. a.k.a. JUAN SANTIAGO RIVERA, M.D.

211.   Plaintiff realleges and incorporates by reference paragraphs 1-165 as if set forth fully herein and further states:

212.   Defendant SANTIAGO had a duty to render proper care and treatment to MR. HAND in accordance with the prevailing standard of care for similar health care providers under similar circumstances.

213.   Defendant SANTIAGO breached that duty and was negligent for at least the following reasons:

    a.   Failing to adequately inform MR. HAND;

    b.   Failing to adequately recognize, timely diagnose, and treat MR. HAND;

    c.   Failing to conduct adequate discharge planning prior to MR. HAND transfer to general population on April 13, 2017, which increased his risk of developing serious illness and infection;

    d.   Failing to timely, appropriately, and adequately assess and treat MR. HAND's symptoms and abnormal vital signs;

    e.   Failing to timely, appropriately, and adequately assess and treat MR. HAND's worsening condition during his RMC admission;

f. Failing to timely order and review appropriate diagnostic and laboratory tests to further evaluate and assess MR. HAND's condition;

g. Failing to timely administer antibiotics to treat MR. HAND's infection;

h. Failing to coordinate care between health care providers and advocate for MR. HAND;

i. Failing to timely provide for a transfer to a different facility for appropriate care and/or intensive care with constant medical monitoring; and

j. Failing to timely, accurately, and appropriately document MR. HAND.

214. The actions and omissions of Defendant SANTIAGO, described above, were negligent and below the applicable standards of care for physicians practicing the specialty of specialty of correctional health services pursuant to Florida Statutes section 766.102, i.e., below that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar healthcare providers.

215. As a direct and proximate result of the negligence described in this Count, MR. HAND died and his Estate, his surviving wife, PHYLLIS A. HAND

51

have suffered damages in the past and will continue to suffer in the future damages and seeks relief as noted below.

216.   Plaintiff has complied with all common law and statutory conditions precedent to bringing this action, including but not limited to all applicable provisions of the Florida Medical Malpractice Act found in Chapter 766, Florida Statutes, and all applicable provisions of Florida Statute §768.28, including timely providing the required written notice to Defendant SANTIAGO.

217.   Undersigned counsel for Plaintiff hereby certifies that a reasonable investigation has been undertaken in connection with this case and said investigation has given rise to a good faith belief that grounds exist for a medical negligence action against Defendant SANTIAGO.

**COUNT IX**
**MEDICAL NEGLIGENCE v. PETER FABIAN EDEMEKONG, M.D.**

218.   Plaintiff realleges and incorporates by reference paragraphs 1-165 as if set forth fully herein and further states:

219.   Defendant EDEMEKONG had a duty to render proper care and treatment to MR. HAND in accordance with the prevailing standard of care for similar health care providers under similar circumstances.

220.   Defendant EDEMEKONG breached that duty and was negligent for at least the following reasons:

a. Failing to adequately inform MR. HAND;

b. Failing to adequately recognize, timely diagnose, and treat MR. HAND;

c. Failing to conduct adequate discharge planning prior to MR. HAND transfer to general population on April 13, 2017, which increased his risk of developing serious illness and infection;

d. Failing to timely, appropriately, and adequately assess and treat MR. HAND's symptoms and abnormal vital signs;

e. Failing to timely, appropriately, and adequately assess and treat MR. HAND's worsening condition during his RMC admission;

f. Failing to timely order and review appropriate diagnostic and laboratory tests to further evaluate and assess MR. HAND's condition;

g. Failing to timely administer antibiotics to treat MR. HAND's infection;

h. Failing to coordinate care between health care providers and advocate for MR. HAND;

i. Failing to timely provide for a transfer to a different facility for appropriate care and/or intensive care with constant medical monitoring; and

j.      Failing to timely, accurately, and appropriately document MR. HAND.

221.   The actions and omissions of Defendant EDEMEKONG, described above, were negligent and below the applicable standards of care for physicians practicing the specialty of specialty of correctional health services pursuant to Florida Statutes section 766.102, i.e., below that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar healthcare providers.

222.   As a direct and proximate result of the negligence described in this Count, MR. HAND died and his Estate, his surviving wife, PHYLLIS A. HAND have suffered damages in the past and will continue to suffer in the future damages and seeks relief as noted below.

223.   Plaintiff has complied with all common law and statutory conditions precedent to bringing this action, including but not limited to all applicable provisions of the Florida Medical Malpractice Act found in Chapter 766, Florida Statutes, and all applicable provisions of Florida Statute §768.28, including timely providing the required written notice to Defendant EDEMEKONG.

224.   Undersigned counsel for Plaintiff hereby certifies that a reasonable investigation has been undertaken in connection with this case and said investigation

54

has given rise to a good faith belief that grounds exist for a medical negligence action

against Defendant EDEMEKONG.

## COUNT X
## MEDICAL NEGLIGENCE v. DRIANNA NISHELL LAW, ARNP

225.   Plaintiff realleges and incorporates by reference paragraphs 1-165 as if

set forth fully herein and further states:

226.   Defendant LAW had a duty to render proper care and treatment to MR.

HAND in accordance with the prevailing standard of care for similar health care

providers under similar circumstances.

227.   Defendant LAW breached that duty and was negligent for at least the

following reasons:

a.   Failing to adequately inform MR. HAND;

b.   Failing to adequately recognize, timely diagnose, and treat MR.

HAND;

c.   Failing to conduct adequate discharge planning prior to MR.

HAND transfer to general population on April 13, 2017, which increased his risk of

developing serious illness and infection;

d.   Failing to timely, appropriately, and adequately assess and treat

MR. HAND's symptoms and abnormal vital signs;

/ / /

e.      Failing to timely, appropriately, and adequately assess and treat MR. HAND's worsening condition during his RMC admission;

f.      Failing to timely order and review appropriate diagnostic and laboratory tests to further evaluate and assess MR. HAND's condition;

g.      Failing to timely administer antibiotics to treat MR. HAND's infection;

h.      Failing to coordinate care between health care providers and advocate for MR. HAND;

i.      Failing to timely provide for a transfer to a different facility for appropriate care and/or intensive care with constant medical monitoring;

j.      Failing to timely, accurately, and appropriately document MR. HAND;

k.      Failing to ensure that MR. HAND was evaluated by his primary care provider after her encounter with MR. HAND on May 5 or May 8, 207, for follow-up per her treatment plan;

l.      Prescribing ibuprofen for MR. HAND, a mediation known for causing GI problems;

m.      Failing to address MR. HAND's serious complaints of abdominal pain, nausea, vomiting, and diarrhea;

56

n.   Falsifying health records;

o.   Failing to timely notify physicians of MR. HAND's abnormal assessments, and failing to document any follow-up assessments; and

p.   Failing to timely, accurately, and appropriately document MR. HAND's condition in his medical records.

228.   The actions and omissions of Defendant LAW, described above, were negligent and below the applicable standards of care for physicians practicing the specialty of specialty of correctional health services pursuant to Florida Statutes section 766.102, i.e., below that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar healthcare providers.

229.   As a direct and proximate result of the negligence described in this Count, MR. HAND died and his Estate, his surviving wife, PHYLLIS A. HAND have suffered damages in the past and will continue to suffer in the future damages and seeks relief as noted below.

230.   Plaintiff has complied with all common law and statutory conditions precedent to bringing this action, including but not limited to all applicable provisions of the Florida Medical Malpractice Act found in Chapter 766, Florida Statutes, and all applicable provisions of Florida Statute §768.28, including timely providing the required written notice to Defendant LAW.

231.   Undersigned counsel for Plaintiff hereby certifies that a reasonable investigation has been undertaken in connection with this case and said investigation has given rise to a good faith belief that grounds exist for a medical negligence action against Defendant LAW.

**COUNT XI**
**VICARIOUS LIABILITY v. MHM HEALTH PROFESSIONALS**

232.   Plaintiff realleges and incorporates by reference paragraphs 1-165 as if set forth fully herein and further states:

233.   Defendant MHM is vicariously liable to the ESTATE OF GLENN MITCHELL HAND, and PHYLLIS A. HAND, his surviving wife, for the harms and damages sustained as a result of the medical negligence of Defendant RODRIGUEZ-RIVERA, Defendant SAINT CHARLES, Defendant SANTIAGO, Defendant EDEMEKONG, Defendant LAW, and the nursing staff, in that, Defendant RODRIGUEZ-RIVERA, Defendant SAINT CHARLES, Defendant SANTIAGO, Defendant EDEMEKONG, Defendant LAW, and the nursing staff were either employees, agents and/or borrowed servants of Defendant MHM, and at all times material, Defendant RODRIGUEZ-RIVERA, Defendant SAINT CHARLES, Defendant SANTIAGO, Defendant EDEMEKONG, Defendant LAW, and the nursing staff were acting within the course and scope of his/her/its/their employment and/or agency relationship with Defendant MHM.

234.   As a direct and proximate result of the medical negligence described in this Count, MR. HAND died and his Estate, his surviving wife, PHYLLIS A. HAND have suffered damages in the past and will continue to suffer in the future damages and seeks relief as noted below.

## COUNT XII
## VICARIOUS LIABILITY v. FRANCIS D. ONG, M.D., P.A.

*(COUNT DISMISSED)*

## COUNT XIII
## DELIBERATE INDIFFERENCE & FAILURE TO TREAT UNDER 42 U.S.C. § 1983 v. DAVID E. RODRIGUEZ-RIVERA, M.D., a.k.a. DAVID RODRIGUEZ, M.D.
## (individual capacity claim)

235.   Plaintiff realleges and incorporates by reference all prior paragraphs as if set forth fully herein and further states:

236.   MR. HAND was a patient in the care of Defendant RODRIGUEZ-RIVERA while incarcerated at RMC.

237.   At all times relevant to this lawsuit, Defendant RODRIGUEZ-RIVERA was acting under the color of statute, ordinance, custom, or usage in his individual capacity as a medical doctor at RMC.

238.   Plaintiff is entitled to relief against Defendant RODRIGUEZ-RIVERA for violation of the Eighth Amendment to the U.S. Constitution.

/ / /

239.   Defendant RODRIGUEZ-RIVERA acted with deliberate indifference included, but not limited to the commission and/or omission of the following acts:

a.   Failing to timely diagnose MR. HAND;

b.   Ignoring and failing to review critical test results indicating a serious infection;

c.   Failing to address the source of MR. HAND's infection;

d.   Failure to provide MR. HAND timely treatment for infection or to transfer him to medical providers or a medical facility that could provide treatment;

e.   Unconscionable adherence to a medical provider who consistently failed to provide needed care to prisoners to save costs and maximize profit;

f.   Failure to ensure that MR. HAND received follow-up evaluation and treatment;

g.   Failure to maintain policies and protocols to make sure that prisoners, such as MR. HAND, with serious chronic and acute medical conditions are timely treated;

/ / /

/ / /

h.    Continual and systematic failure to respond to MR. HAND's changing medical condition in a timely manner, over a period of approximately two weeks, resulting his death;

240.  Defendant RODRIGUEZ-RIVERA knew about MR. HAND's documented medical needs and symptoms, knew that MR. HAND's basic medical needs were not being met and that the treatment offered was totally insufficient in addressing his symptoms and serious medical condition.

241.  Defendant RODRIGUEZ-RIVERA totally failed to diagnose MR. HAND and allowed him to become septic and sustain and suffer from multi-organ failure while being admitted at RMC without any meaningful plan to diagnose, monitor, or treat his rapidly deteriorating medical condition.

242.  Defendant RODRIGUEZ-RIVERA disregarded MR. HAND's symptoms, vital signs, and lab results and failed to treat him, despite knowing that he required adequate medical care.

243.  Defendant RODRIGUEZ-RIVERA failed to even acknowledge MR. HAND's symptoms, vital signs, or the critical test results that objectively identified a serious infection.

244.  Defendant RODRIGUEZ-RIVERA failed to perform any assessment to identify the source of MR. HAND's infection.

245.   Defendant RODRIGUEZ-RIVERA was obviously indifferent to MR. HAND's serious medical needs and failed to address or attempt to address his symptoms in any meaningful way whatsoever.

246.   Defendant RODRIGUEZ-RIVERA provided such cursory treatment to MR. HAND that is essentially amounted to no treatment at all.  Further, the treatment, if any provided at all, was pursued by easier less effective means.

247.   Defendant RODRIGUEZ-RIVERA totally failed to acknowledge or follow up on MR. HAND's serious medical needs in any way.

248.   Defendant RODRIGUEZ-RIVERA never reviewed the critical lab results that indicated a severe infection, that had he reviewed, would have results in further physical evaluation and medical treatment and/or a transfer to a different facility.  Instead, MR. HAND did not receive necessary or thorough evaluations, ultimately leading to his death.

249.   Defendant RODRIGUEZ-RIVERA was deliberately, recklessly and wantonly indifferent to MR. HAND's health and grossly negligent in the care (or lack thereof) provided to MR. HAND.

250.   The acts and omissions of Defendant RODRIGUEZ-RIVERA amount to deliberate indifference to MR. HAND's serious medical needs and were a direct and proximate cause of MR. HAND's death.

251.   The acts and omissions of these Defendant RODRIGUEZ-RIVERA constitutes willful, wanton, reckless, conscious, and deliberate indifference and disregard of MR. HAND's constitutional rights, such that Plaintiff is entitled to recover punitive damages.

252.   As it was necessary for Plaintiff to hire the undersigned attorney to represent Plaintiff, Plaintiff is entitled to an award of attorneys' fees and costs.

253.   WHEREFORE, Plaintiff, the ESTATE OF GLENN MITCHELL HAND, by and through PHYLLIS A. HAND, Personal Representative seeks relief as noted below.

## COUNT XIV
## DELIBERATE INDIFFERENCE & FAILURE TO TREAT UNDER 42 U.S.C. § 1983 v. JEAN MAX SAINT CHARLES, M.D.
### (individual capacity claim)

254.   Plaintiff realleges and incorporates by reference all prior paragraphs as if set forth fully herein and further states:

255.   MR. HAND was a patient in the care of Defendant SAINT CHARLES while incarcerated at RMC.

256.   At all times relevant to this lawsuit, Defendant SAINT CHARLES was acting under the color of statute, ordinance, custom, or usage in his individual capacity as a medical doctor at RMC.

/ / /

257.   Plaintiff is entitled to relief against Defendant SAINT CHARLES for violation of the Eighth Amendment to the U.S. Constitution.

258.   Defendant SAINT CHARLES acted with deliberate indifference included, but not limited to the commission and/or omission of the following acts:

a.   Failing to conduct adequate discharge planning prior to MR. HAND transfer to general population on April 13, 2017, which increased his risk of developing serious illness and infection;

b.   Failing to timely diagnose MR. HAND;

c.   Ignoring and failing to review critical test results indicating a serious infection;

d.   Failing to address the source of MR. HAND's infection;

e.   Failure to provide MR. HAND timely treatment for infection or to transfer him to medical providers or a medical facility that could provide treatment;

f.   Unconscionable adherence to a medical provider who consistently failed to provide needed care to prisoners to save costs and maximize profit;

g.   Failure to ensure that MR. HAND received follow-up evaluation and treatment;

h.     Failure to maintain policies and protocols to make sure that prisoners, such as MR. HAND, with serious chronic and acute medical conditions are timely treated;

i.     Continual and systematic failure to respond to MR. HAND's changing medical condition in a timely manner, over a period of approximately two weeks, resulting his death;

259.   Defendant SAINT CHARLES knew about MR. HAND's documented medical needs and symptoms, knew that MR. HAND's basic medical needs were not being met and that the treatment offered was totally insufficient in addressing his symptoms and serious medical condition.

260.   Defendant SAINT CHARLES totally failed to diagnose MR. HAND and allowed him to become septic and sustain and suffer from multi-organ failure while being admitted at RMC without any meaningful plan to diagnose, monitor, or treat his rapidly deteriorating medical condition.

261.   Defendant SAINT CHARLES disregarded MR. HAND's symptoms, vital signs, and lab results and failed to treat him, despite knowing that he required adequate medical care.

262.   Defendant SAINT CHARLES failed to even acknowledge MR. HAND's symptoms, vital signs, or the critical test results that objectively identified a serious infection.

263.   Defendant SAINT CHARLES failed to perform any assessment to identify the source of MR. HAND's infection.

264.   Defendant SAINT CHARLES was obviously indifferent to MR. HAND's serious medical needs and failed to address or attempt to address his symptoms in any meaningful way whatsoever.

265.   Defendant SAINT CHARLES provided such cursory treatment to MR. HAND that is essentially amounted to no treatment at all.  Further, the treatment, if any provided at all, was pursued by easier less effective means.

266.   Defendant SAINT CHARLES totally failed to acknowledge or follow up on MR. HAND's serious medical needs in any way.

267.   Defendant SAINT CHARLES never reviewed the critical lab results that indicated a severe infection, that had he reviewed, would have results in further physical evaluation and medical treatment and/or a transfer to a different facility. Instead, MR. HAND did not receive necessary or thorough evaluations, ultimately leading to his death.

/ / /

268.   Defendant SAINT CHARLES was deliberately, recklessly and wantonly indifferent to MR. HAND's health and grossly negligent in the care (or lack thereof) provided to MR. HAND.

269.   The acts and omissions of Defendant SAINT CHARLES amount to deliberate indifference to MR. HAND's serious medical needs and were a direct and proximate cause of MR. HAND's death.

270.   The acts and omissions of these Defendant SAINT CHARLES constitutes willful, wanton, reckless, conscious, and deliberate indifference and disregard of MR. HAND's constitutional rights, such that Plaintiff is entitled to recover punitive damages.

271.   As it was necessary for Plaintiff to hire the undersigned attorney to represent Plaintiff, Plaintiff is entitled to an award of attorneys' fees and costs.

272.   WHEREFORE, Plaintiff, the ESTATE OF GLENN MITCHELL HAND, by and through PHYLLIS A. HAND, Personal Representative seeks relief as noted below.

**COUNT XV**
**DELIBERATE INDIFFERENCE & FAILURE TO TREAT UNDER 42 U.S.C. § 1983 v. JUAN SANTIAGO, M.D. a.k.a JUAN SANTIAGO RIVERA, M.D.**
**(individual capacity claim)**

273.   Plaintiff realleges and incorporates by reference all prior paragraphs as if set forth fully herein and further states:

274.   MR. HAND was a patient in the care of Defendant SANTIAGO while incarcerated at RMC.

275.   At all times relevant to this lawsuit, Defendant SANTIAGO was acting under the color of statute, ordinance, custom, or usage in his individual capacity as a medical doctor at RMC.

276.   Plaintiff is entitled to relief against Defendant SANTIAGO for violation of the Eighth Amendment to the U.S. Constitution.

277.   Defendant SANTIAGO acted with deliberate indifference included, but not limited to the commission and/or omission of the following acts:

      a.    Failing to timely diagnose MR. HAND;

      b.    Ignoring and failing to review critical test results indicating a serious infection;

      c.    Failing to address the source of MR. HAND's infection;

      d.    Failure to provide MR. HAND timely treatment for infection or to transfer him to medical providers or a medical facility that could provide treatment;

      e.    Unconscionable adherence to a medical provider who consistently failed to provide needed care to prisoners to save costs and maximize profit;

   f. Failure to ensure that MR. HAND received follow-up evaluation and treatment;

   g. Failure to maintain policies and protocols to make sure that prisoners, such as MR. HAND, with serious chronic and acute medical conditions are timely treated;

   h. Continual and systematic failure to respond to MR. HAND's changing medical condition in a timely manner, over a period of approximately two weeks, resulting his death;

278. Defendant SANTIAGO knew about MR. HAND's documented medical needs and symptoms, knew that MR. HAND's basic medical needs were not being met and that the treatment offered was totally insufficient in addressing his symptoms and serious medical condition.

279. Defendant SANTIAGO totally failed to diagnose MR. HAND and allowed him to become septic and sustain and suffer from multi-organ failure while being admitted at RMC without any meaningful plan to diagnose, monitor, or treat his rapidly deteriorating medical condition.

280. Defendant SANTIAGO disregarded MR. HAND's symptoms, vital signs, and lab results and failed to treat him, despite knowing that he required adequate medical care.

281.   Defendant SANTIAGO failed to even acknowledge MR. HAND's symptoms, vital signs, or the critical test results that objectively identified a serious infection.

282.   Defendant SANTIAGO failed to perform any assessment to identify the source of MR. HAND's infection.

283.   Defendant SANTIAGO was obviously indifferent to MR. HAND's serious medical needs and failed to address or attempt to address his symptoms in any meaningful way whatsoever.

284.   Defendant SANTIAGO provided such cursory treatment to MR. HAND that is essentially amounted to no treatment at all.  Further, the treatment, if any provided at all, was pursued by easier less effective means.

285.   Defendant SANTIAGO totally failed to acknowledge or follow up on MR. HAND's serious medical needs in any way.

286.   Defendant SANTIAGO never reviewed the critical lab results that indicated a severe infection, that had he reviewed, would have results in further physical evaluation and medical treatment and/or a transfer to a different facility. Instead, MR. HAND did not receive necessary or thorough evaluations, ultimately leading to his death.

/ / /

287.   Defendant SANTIAGO was deliberately, recklessly and wantonly indifferent to MR. HAND's health and grossly negligent in the care (or lack thereof) provided to MR. HAND.

288.   The acts and omissions of Defendant SANTIAGO amount to deliberate indifference to MR. HAND's serious medical needs and were a direct and proximate cause of MR. HAND's death.

289.   The acts and omissions of these Defendant SANTIAGO constitutes willful, wanton, reckless, conscious, and deliberate indifference and disregard of MR. HAND's constitutional rights, such that Plaintiff is entitled to recover punitive damages.

290.   As it was necessary for Plaintiff to hire the undersigned attorney to represent Plaintiff, Plaintiff is entitled to an award of attorneys' fees and costs.

291.   WHEREFORE, Plaintiff, the ESTATE OF GLENN MITCHELL HAND, by and through PHYLLIS A. HAND, Personal Representative seeks relief as noted below.

### COUNT XVI
### DELIBERATE INDIFFERENCE & FAILURE TO TREAT UNDER 42 U.S.C. § 1983 v. PETER FABIAN EDEMEKONG, M.D.
### (individual capacity claim)

292.   Plaintiff realleges and incorporates by reference all prior paragraphs as if set forth fully herein and further states:

293.   MR. HAND was a patient in the care of Defendant EDEMEKONG while incarcerated at RMC.

294.   At all times relevant to this lawsuit, Defendant EDEMEKONG was acting under the color of statute, ordinance, custom, or usage in his individual capacity as a medical doctor at RMC.

295.   Plaintiff is entitled to relief against Defendant EDEMEKONG for violation of the Eighth Amendment to the U.S. Constitution.

296.   Defendant EDEMEKONG acted with deliberate indifference included, but not limited to the commission and/or omission of the following acts:

   a.   Failing to timely diagnose MR. HAND;

   b.   Ignoring and failing to review critical test results indicating a serious infection;

   c.   Failing to address the source of MR. HAND's infection;

   d.   Failure to provide MR. HAND timely treatment for infection or to transfer him to medical providers or a medical facility that could provide treatment;

   e.   Unconscionable adherence to a medical provider who consistently failed to provide needed care to prisoners to save costs and maximize profit;

f.　　Failure to ensure that MR. HAND received follow-up evaluation and treatment;

g.　　Failure to maintain policies and protocols to make sure that prisoners, such as MR. HAND, with serious chronic and acute medical conditions are timely treated;

h.　　Continual and systematic failure to respond to MR. HAND's changing medical condition in a timely manner, over a period of approximately two weeks, resulting his death;

297.　Defendant EDEMEKONG knew about MR. HAND's documented medical needs and symptoms, knew that MR. HAND's basic medical needs were not being met and that the treatment offered was totally insufficient in addressing his symptoms and serious medical condition.

298.　Defendant EDEMEKONG totally failed to diagnose MR. HAND and allowed him to become septic and sustain and suffer from multi-organ failure while being admitted at RMC without any meaningful plan to diagnose, monitor, or treat his rapidly deteriorating medical condition.

299.　Defendant EDEMEKONG disregarded MR. HAND's symptoms, vital signs, and lab results and failed to treat him, despite knowing that he required adequate medical care.

300.  Defendant EDEMEKONG failed to even acknowledge MR. HAND's symptoms, vital signs, or the critical test results that objectively identified a serious infection.

301.  Defendant EDEMEKONG failed to perform any assessment to identify the source of MR. HAND's infection.

302.  Defendant EDEMEKONG was obviously indifferent to MR. HAND's serious medical needs and failed to address or attempt to address his symptoms in any meaningful way whatsoever.

303.  Defendant EDEMEKONG provided such cursory treatment to MR. HAND that is essentially amounted to no treatment at all.  Further, the treatment, if any provided at all, was pursued by easier less effective means.

304.  Defendant EDEMEKONG totally failed to acknowledge or follow up on MR. HAND's serious medical needs in any way.

305.  Defendant EDEMEKONG never reviewed the critical lab results that indicated a severe infection, that had he reviewed, would have results in further physical evaluation and medical treatment and/or a transfer to a different facility. Instead, MR. HAND did not receive necessary or thorough evaluations, ultimately leading to his death.

/ / /

306.   Defendant EDEMEKONG was deliberately, recklessly and wantonly indifferent to MR. HAND's health and grossly negligent in the care (or lack thereof) provided to MR. HAND.

307.   The acts and omissions of Defendant EDEMEKONG amount to deliberate indifference to MR. HAND's serious medical needs and were a direct and proximate cause of MR. HAND's death.

308.   The acts and omissions of these Defendant EDEMEKONG constitutes willful, wanton, reckless, conscious, and deliberate indifference and disregard of MR. HAND's constitutional rights, such that Plaintiff is entitled to recover punitive damages.

309.   As it was necessary for Plaintiff to hire the undersigned attorney to represent Plaintiff, Plaintiff is entitled to an award of attorneys' fees and costs.

310.   WHEREFORE, Plaintiff, the ESTATE OF GLENN MITCHELL HAND, by and through PHYLLIS A. HAND, Personal Representative seeks relief as noted below.

**COUNT XVII**
**DELIBERATE INDIFFERENCE & FAILURE TO TREAT UNDER 42**
**U.S.C. § 1983 v. DRIANNA NISHELL LAW, ARNP**
**(individual capacity claim)**

311.   Plaintiff realleges and incorporates by reference all prior paragraphs as if set forth fully herein and further states:

75

312.   MR. HAND was a patient in the care of Defendant LAW while incarcerated at RMC.

313.   At all times relevant to this lawsuit, Defendant LAW was acting under the color of statute, ordinance, custom, or usage in his individual capacity as a medical doctor at RMC.

314.   Plaintiff is entitled to relief against Defendant LAW for violation of the Eighth Amendment to the U.S. Constitution.

315.   Defendant LAW acted with deliberate indifference included, but not limited to the commission and/or omission of the following acts:

      a.     Failing to timely diagnose MR. HAND;

      b.     Ignoring and failing to review critical test results indicating a serious infection;

      c.     Failing to address the source of MR. HAND's infection;

      d.     Failure to provide MR. HAND timely treatment for infection or to transfer him to medical providers or a medical facility that could provide treatment;

      e.     Unconscionable adherence to a medical provider who consistently failed to provide needed care to prisoners to save costs and maximize profit;

f.      Failure to ensure that MR. HAND received follow-up evaluation and treatment;

g.      Failure to maintain policies and protocols to make sure that prisoners, such as MR. HAND, with serious chronic and acute medical conditions are timely treated;

h.      Continual and systematic failure to respond to MR. HAND's changing medical condition in a timely manner, over a period of approximately two weeks, resulting his death;

316.    Defendant LAW knew about MR. HAND's documented medical needs and symptoms, knew that MR. HAND's basic medical needs were not being met and that the treatment offered was totally insufficient in addressing his symptoms and serious medical condition.

317.    Defendant LAW totally failed to diagnose MR. HAND and allowed him to become septic and sustain and suffer from multi-organ failure while being treated at RMC without any meaningful plan to diagnose, monitor, or treat his rapidly deteriorating medical condition.

318.    Defendant LAW disregarded MR. HAND's symptoms, vital signs, and lab results and failed to treat him, despite knowing that he required adequate medical care.

319.   Defendant LAW failed to even acknowledge MR. HAND's symptoms, vital signs, or the critical test results that objectively identified a serious infection.

320.   Defendant LAW failed to perform any assessment to identify the source of MR. HAND's infection.

321.   Defendant LAW was obviously indifferent to MR. HAND's serious medical needs and failed to address or attempt to address his symptoms in any meaningful way whatsoever.

322.   Defendant LAW provided such cursory treatment to MR. HAND that is essentially amounted to no treatment at all.  Further, the treatment, if any provided at all, was pursued by easier less effective means.

323.   Defendant LAW totally failed to acknowledge or follow up on MR. HAND's serious medical needs in any way.

324.   Defendant LAW never reviewed the critical lab results that indicated a severe infection, that had he reviewed, would have results in further physical evaluation and medical treatment and/or a transfer to a different facility.  Instead, MR. HAND did not receive necessary or thorough evaluations, ultimately leading to his death.

/ / /

/ / /

325.   Defendant LAW was deliberately, recklessly and wantonly indifferent to MR. HAND's health and grossly negligent in the care (or lack thereof) provided to MR. HAND.

326.   The acts and omissions of Defendant LAW amount to deliberate indifference to MR. HAND's serious medical needs and were a direct and proximate cause of MR. HAND's death.

327.   The acts and omissions of these Defendant LAW constitutes willful, wanton, reckless, conscious, and deliberate indifference and disregard of MR. HAND's constitutional rights, such that Plaintiff is entitled to recover punitive damages.

328.   As it was necessary for Plaintiff to hire the undersigned attorney to represent Plaintiff, Plaintiff is entitled to an award of attorneys' fees and costs.

329.   WHEREFORE, Plaintiff, the ESTATE OF GLENN MITCHELL HAND, by and through PHYLLIS A. HAND, Personal Representative seeks relief as noted below.

## **DAMAGES AND PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, the ESTATE OF GLENN MITCHELL HAND, by and through PHYLLIS A. HAND, Personal Representative, prays for relief and demands judgment against Defendant FLORIDA DEPARTMENT OF

CORRECTIONS; Defendant CENTURION OF FLORIDA; Defendant MHM HEALTH PROFESSIONALS; Defendant DAVID E. RODRIGUEZ-RIVERA, M.D., a.k.a. DAVID RODRIGUEZ, M.D.; Defendant JEAN MAX SAINT CHARLES, M.D.; Defendant JUAN SANTIAGO RIVERA, M.D.; Defendant PETER FABIAN EDEMEKONG, M.D.; Defendant DRIANNA NISHELL LAW, ARNP for damages in excess of Seventy Five Thousand Dollars ($75,000.00) as follows:

A.     Wrongful death damages including: (1) survivor PHYLLIS A. HAND, MR. HAND's  surviving wife - loss of her husband's support and services, the loss of his companionship and protection, and mental pain and suffering as a result of the injury and subsequent death of her husband; (2) Estate of GLENN MITCHELL HAND – loss of net accumulations, medical, nursing, and funeral expenses; and (3) all other damages allowed by law.

B.     Attorney's fees and costs as permitted by law;

C.     Punitive damages as permitted by law;

D.     Pre-judgment and post-judgment interest as permitted by law;

E.     A jury trial on all Counts; and

F.     Any such further and additional relief as this Court deems proper.

/ / /

**TRIAL BY JURY IS AND HAS BEEN DEMANDED.**

Dated this 28th day of July 2020.

/s/ Adam Anderson

Adam C. Anderson, Esq.

Florida Bar No. 125640

ADAM ANDERSON LAW FIRM

5 Miracle Strip Loop, Suite 7

Panama City Beach, FL 32407

Phone:    (850) 588-3288

Fax:        (850) 588-3287

Email:    adam@winwithadam.com

*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 28, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Francis H. Sheppard at fsheppard@rumberger.com and Kayla E. Platt Rady at krady@rumberger.com (counsel for Defendants Centurion of Florida; MHM Health Professionals, Inc.; David E. Rodriguez-Rivera, M.D., a/k/a David Rodriguez, M.D.; Jean Max Saint Charles, M.D.; Juan Santiago, M.D. a/k/a Juan Santiago Rivera, M.D.; Peter Fabian Edemekong, M.D.; Drianna Nishell Law, ARNP), Thomas R. Thompson at tom@tcslawfirm.net and Mallory R. Bennett at mallory@tcslawfirm.net (counsel for Defendant Florida Department of Corrections).

DATED this 28th day of July 2020.

/s/ Adam Anderson
Adam C. Anderson, Esq.
Florida Bar No. 125640
ADAM ANDERSON LAW FIRM
5 Miracle Strip Loop, Ste. 7
Panama City Beach, Florida 32407
Phone:   (850) 588-3288
Fax:       (850) 588-3287
Email:    adam@winwithadam.com
   *Attorney for Plaintiff*