IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**ESTATE OF GLENN MITCHELL**
**HAND, by and through PHYLLIS A.**
**HAND, Personal Representative,**

    Plaintiff,

v.                                                  Case No. 4:20-cv-66-AW-HTC

**FLORIDA DEPARTMENT OF**
**CORRECTIONS, et al.,**

    Defendants.

_____/

## ORDER ON MOTIONS TO DISMISS

Glenn Mitchell Hand died in Florida Department of Corrections custody, and his widow (as the estate's personal representative) has sued.[1] Broadly speaking, the claim is that Hand suffered and died after receiving inadequate medical care.

The Estate sued ten defendants. ECF No. 1-1 at 81 (FAC). Two have since settled. ECF No. 28. And the court dismissed claims against others, but with leave to amend. ECF No. 37. The Estate has now filed a Second Amended Complaint (ECF No. 39 (SAC)), and two defendants—MHM and DOC—have answered. ECF Nos. 40, 47. The remaining defendants have moved to dismiss. ECF Nos. 41-46.

---

[1] Unless indicated otherwise, the facts in this order come from the Second Amended Complaint (ECF No. 39). At this stage, the complaint's well-pleaded allegations are accepted as true. *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019).

1

The moving defendants are Centurion of Florida and five health care professionals who worked for Centurion and—at one time or another—provided care to Hand. Those individuals are Nurse Practitioner Drianna Law, Dr. Peter Edemekong, Dr. David Rodriquez-Rivera, Dr. Jean Max Saint Charles, and Dr. Juan Santiago.

The Second Amended Complaint alleges two counts against each of the moving defendants: a § 1983 claim for deliberate indifference and failure to treat (Counts II and XIII-XVII) and a state-law medical-negligence claim (Counts IV and VI-X). Each motion challenges the § 1983 claim only. *See* ECF Nos. 41-46. The motions all argue that the Estate has not alleged enough to show a constitutional violation, and the individual defendants also argue qualified immunity. I agree that the Estate has not alleged any constitutional violation, so I need not address qualified immunity.

To survive a Rule 12(b)(6) motion, a complaint must assert "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In evaluating the complaint's sufficiency, I accept all well-pleaded factual allegations

2

as true, but I do not afford the presumption of truth to legal conclusions. *White v. Lemma*, 947 F.3d 1373, 1380 (11th Cir. 2020) (citing *Iqbal*).

To establish an Eighth Amendment violation based on inadequate medical care, a plaintiff must make a substantial showing:

> First, the inmate must establish an objectively serious medical need— that is, one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention—that, if left unattended, poses a substantial risk of serious harm. Second, the inmate must prove that prison officials acted with deliberate indifference to that need by showing (1) that they had subjective knowledge of a risk of serious harm and (2) that they disregarded that risk (3) by conduct that was more than mere negligence.

*Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (marks and citation omitted).

As before, the parties agree that this is the controlling standard, but they disagree as to whether the Second Amended Complaint alleges enough to meet it. In my order dismissing the earlier § 1983 claims against the individual defendants, I concluded "the Estate ha[d] not plausibly alleged that any individual defendant was deliberately indifferent to a serious medical need." ECF No. 37 at 9.

Although the Second Amended Complaint includes additional allegations of subpar medical care, the allegations still fall short of supporting a deliberate-indifference claim. The Estate alleges that Hand had an objectively serious medical condition, and the defendants do not claim otherwise. But Hand has not alleged facts

supporting any individual's subjective knowledge of that risk. *Cf. Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) ("Each individual Defendant must be judged separately and on the basis of what that person knows."). And even assuming the individual defendants were subjectively aware of Hand's medical condition, the Estate has not plausibly alleged that their failure to provide additional care was anything more than mere negligence.

As it did before, the Estate argues that it alleged enough to show the individual defendants (1) provided treatment so cursory that it amounted to no care at all, (2) decided to pursue an easier but less effective course of treatment, (3) did not maintain adequate policies and procedures for providing necessary care, and (4) exhibited "continual and systematic failure to respond to Mr. Hand's changing medical condition in a timely manner." ECF No. 52 at 28.[2]

I rejected these arguments in the earlier order, and the arguments remain unpersuasive. First, Hand was diagnosed with cancer, treated with chemotherapy, referred to a plastic surgeon, and seen by no fewer than five healthcare providers. These allegations cannot square with any conclusion that Hand received only

---

[2] The Estate responded separately to each individual defendant's motion to dismiss, but the responses are largely identical. They do include some variation as to the allegations against each individual. *See* ECF Nos. 48-52.

4

cursory treatment.[3] *See* ECF No. 37 at 6. Second, the amended complaint contains no factual allegations supporting any conclusion that the individual defendants chose to pursue an easier, less effective treatment. The allegations show—at best—that that they were negligent in not diagnosing an infection sooner. *Cf. McElligott v. Foley*, 182 F.3d 1248, 1256 (11th Cir. 1999) ("While that failure to diagnose can be deemed extremely negligent, it does not cross the line to deliberate indifference."). Third, the absence of policies and procedures for ensuring adequate care does not without more, establish deliberate indifference on the part of the individual defendants, and the Estate cites no authority saying otherwise. *Cf. Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) ("In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind." (quoting *Estelle v. Gamble*, 429 U.S. 97, 106-07 (1976))). And fourth, the alleged "continual and systematic failure" to treat Hand's condition does not establish deliberate indifference on behalf of any individual defendant. *Cf. Burnette*,

---

[3] The Estate argues that Hand never received treatment for his infection, which was his ultimate cause of death. *See, e.g.*, ECF No. 52 at 27. But this does not establish deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

533 F.3d at 1331 ("[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.").

In arguing that it has alleged enough, the Estate points to several allegations setting out the standard. *See, e.g.*, ECF No. 52 at 14 (citing SAC ¶ 150 (alleging that Dr. Santiago "continued to ignore the glaring and obvious infection that was killing" Hand)); *id.* at 14 (citing SAC ¶ 154 (alleging that "[t]he serious medical condition was ignored, and [Hand] was left to deteriorate further, to the point of no return")); *see also* SAC ¶ 71 (alleging Nurse Practitioner Law "had knowledge of [Hand's] serious medical condition as indicated by his presentation on May 5, 2017 and worsening condition and presentation on May 8, 2017 but clearly disregarded the risks associated with the serious medical condition based upon her diagnosis and orders"). But such conclusory statements cannot support a claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). And in areas with more facts—*see, e.g.*, ECF No. 52 at 6 (citing SAC ¶ 45 (alleging Nurse Practitioner Law provided medication "known to cause/exacerbate gastrointestinal problems that is contraindicated in a patient with stomach problems")); *id.* at 9 (citing SAC ¶ 92 (alleging that after being informed that Hand had a fever, Dr. Rodriquez-Rivera "decided to take an easier course of treatment and simply ordered Tylenol to be administered")); *id.* at 9-10

(citing SAC ¶¶ 98-99 (alleging Dr. Saint Charles misdiagnosed Hand as being dehydrated))—they show, at most, medical negligence. The Estate also repeatedly points to failures of the "nursing staff." But again, even assuming there was a collective failure, the Estate is suing these defendants as individuals, meaning it must allege facts to show that the defendants—as individuals—were deliberately indifferent. *Cf. Burnette*, 533 F.3d at 1331.

At the end of the day, the Second Amended Complaint does not allege that the individual defendants were deliberately indifferent to Hand's serious medical needs, so the § 1983 claims against them will be dismissed.

That leaves the Eighth Amendment claim against Centurion. Centurion says this claim can proceed only if the Estate has stated a claim against at least one of the individual defendants. ECF No. 46 at 2-3 (citing *Rooney v. Watson*, 101 F.3d 1378 (11th Cir. 1996)). In *Rooney*, the Eleventh Circuit held that "[a]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred." 101 F.3d at 1381. But it did not say that individual liability must be established before a plaintiff can assert a § 1983 claim against an entity. And, in fact, the Eleventh Circuit has held that *Monell* liability "do[es] not require that a jury must first find an individual defendant liable before imposing liability on local government." *Barnett v. MacArthur*, 956 F.3d 1291, 1301 (11th Cir. 2020) (quoting *Anderson v. City of Atlanta*, 778 F.2d 678, 686 (11th Cir. 1985)

7

and collecting cases); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). "For example, municipal liability can exist if a jury finds that a constitutional injury is due to a municipal policy, custom, or practice, but also finds that no officer is individually liable for the violation." *Barnett*, 956 F.3d at 1301. That the Estate has not stated a claim against any individual defendant does not mean that Hand suffered no constitutional injury. So the Estate's inability to state a § 1983 claim against the individuals does not automatically doom its § 1983 claim against Centurion.

Where a government (or an entity performing an essential government function) has an "official policy or custom" that is the "moving force" behind a constitutional deprivation, the entity is liable under § 1983. *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 967 (11th Cir. 2002); *cf. also Reed v. Centurion Health of Fla.*, No. 4:18CV472-WS-CAS, 2020 WL 1228650, at *9 (N.D. Fla. Feb. 6) ("Plaintiff's claim is not based on a theory of respondeat superior but, rather, that Centurion's policy caused Plaintiff harm."), *report and recommendation adopted*, No. 4:18CV472-WS/CAS, 2020 WL 1170222 (N.D. Fla. Mar. 11, 2020). The Estate tries to meet this standard by alleging, for example, that Centurion maintained "policies of denial, delay, and minimization of care in order to cut costs and maximize profits," SAC ¶ 186a., and that it "had a custom and practice of delaying and denying care to maximize its profits and of demanding that its employees make decisions calculated to save money rather than to provide needed medical care,"

SAC ¶ 183, which "made constitutional violations such as those suffered by [Hand] substantially certain to happen," SAC ¶ 181. *See also* ECF No. 53 at 3 (citing SAC ¶¶ 179-89). But these are again conclusory.

The only factual allegations that could support the claim are that Centurion's predecessor, Corizon, was fined for not providing adequate care, SAC ¶ 184b., and that Centurion continued the practice of inadequate care when it took over, SAC ¶ 185. Although this provides some factual enhancement, it is not enough to survive the motion to dismiss. The Estate does not allege that cost concerns played a part in the provider's treatment decisions—or at least it does not allege facts to make such a claim plausible. It has not, for example, alleged that Hand's infection required particularly expensive treatment. In fact, the failures it alleges—staff's neglecting to pass along reports and so forth—have little or nothing to do with cost. In short, it is not enough to allege merely that Centurion "has a national corporate policy to provide prisoners as little care as possible as late as possible in order to maximize profits." SAC ¶ 185b. Therefore, Centurion's motion will be granted.

IT IS NOW ORDERED:

The motions to dismiss (ECF Nos. 41, 42, 43, 44, 45, and 46) are GRANTED. Counts II and XIII-XVII, are DISMISSED. Within 14 days, Centurion and the individual defendants must answer as to the remaining claims.

SO ORDERED on January 13, 2021.

                                                s/ *Allen Winsor*
                                                United States District Judge